which will be by remote argument is U.S. v. Ambriz-Villa, 21-1362. Mr. Brangle, I see you are there, as well as Mr. Norwood. Mr. Brangle, whenever you're ready. Thank you, Your Honor. May it please the Court, the issues before the Court here today are whether or not the seizure of Mr. Ambriz-Villa was unreasonable in its scope and manner, whether or not there is reasonable suspicion to continue the seizure of Mr. Ambriz-Villa when he was provided a warning, and whether or not the sentence was reasonable. If it pleases the Court, the defendant would like to confine his argument to the search and seizure topics and stand on his brief with respect to the sentencing arguments. Mr. Brangle, can I clarify one thing first, please? You aren't contesting the validity of the initial stop for crossing the white line, are you? No, Your Honor. Okay, thank you. Thank you. So what we'd like to highlight for the Court is while oftentimes when we're dealing with sort of mission of the stops, we're also dealing with a duration of the stop question, and we purposely did not raise a duration sort of argument in our brief because as I think the Court correctly noted in the previous argument, the District Court found the stop to be, in our case, not to have been, you know, too long. And so we would have been competing with a clearly erroneous standard on appeal. Instead, what we assert is that even within the mission of the stop, where it is not delayed, the manner and scope of the stop must be reasonable and tied to what caused the stop in the first place. Mr. Brangle, can I ask you a question regarding reasonable suspicion? You spent some time arguing that the District Judge, and he did, when he wrote his order, he found that reasonable suspicion existed after the warning was issued. I think that's how he phrased it. But can't we just, if we felt that reasonable suspicion existed sooner than that, can't we affirm on the grounds of reasonable suspicion here? There are clearly, and the reason I say that is I read the District Court's order to say exactly what it says and exactly what you say, but the District Court articulates numerous facts that occur long before the police officer wrote the warning that led to reasonable suspicion. In other words, there was no magic event when the police officer handed your client the warning where, aha, now we've equaled reasonable suspicion. All the facts that built up to reasonable suspicion occurred long before that, starting with the fact that it took your client I think about 90 seconds to find the registration in his car, which of course, in addition to the other facts that the officer knew, caused his antenna to go up. Well, Your Honor, I would say, I guess what we argue in our brief is that a lot of the facts that might, that I think the government points to and the District Court pointed to which make up reasonable suspicion, I think our position is that they are so common among many innocent drivers. And the government asserts in its brief that, well, this is a sort of divide and conquer strategy on the part of the defendant. And I would say in response to that, I disagree in this case because the facts that are pointed to, the out-of-state driver's license, I think there was an allegation of a masking odor, a nervousness of someone who has English as a second language, road trash. These are just so common of people on the highway that it's hard to, I would respectfully argue to the court, it's hard to argue that it has indicative of being someone who is engaged in criminal activity. If the court were to disagree with that analysis, you're the Court of Appeals, I am not. I'm just respectfully suggesting that that is common to so many people. It's hard to sort out who would be suspicious versus who is not, Your Honor, would be my answer to that question. So I think the government in its brief suggests, if Mr. Norwood would disagree, I'm sure he will when it's his time, but that within the realm of the stop that is not delayed, that the officer has almost carte blanche to ask as many and as adversarial questions as he would prefer without committing a constitutional violation. And we would respectfully suggest to the court that that is not the law. And that even where the stop is not delayed, there are limits to the manner and scope of the way the government can conduct an investigation during the stop. So, for example, in this case, Your Honor, Mr. Ambrose Vila is asked on a number of occasions, well, do you have anything illegal in the car? You know, the first time, it may not be like the greatest violation or greatest offense, but when these questions are repeated, the adversarial nature of the interaction is being ratcheted up because the communication to the defendant is, I understand you have told me that there's nothing illegal in the car, but I don't believe you. And I'm going to continue to answer questions. And it makes the interaction between the defendant and the officer much more intimidating than it would be otherwise. And so, Your Honor, I'm approaching my time for rebuttal. If it would please the court, I'd like to reserve the rest of the time. Yes, certainly. Thank you, Mr. Brink. Mr. Norwood. Your Honors, and may it please the court. I agree with Judge Kirsch that reasonable suspicion is not one distinct point in time, it's a continuum. And this officer began developing reasonable suspicion at the time he got to the car, the delay in getting the registration, the masking order, multiple cell phones, the answers to the questions about his travel. There were a whole continuum, a number of facts that contributed to the finding of reasonable suspicion. And I also believe the law is that when you're considering reasonable suspicion, you have to take into account the training and experience of the officer. And this particular officer was very experienced in interdiction and knew the signs to look for, for reasonable suspicion, to believe that somebody is in fact possibly committing a crime. The other important fact that I would point out is that the district court's order says that the officer's questions this entire time were while the officer was processing the ticket. There is no evidence anywhere in the record that the officer delayed the traffic stop for one second. The district judge found he was processing the ticket during the time he was asking these questions. And I think it was actually a textbook traffic stop. Your honors, I believe we'll have the disk if you want to review it. But the district court found that the officer had ample reasonable suspicion. And there's really not much more to say. I think it was a very good traffic stop in this case. The defendant is not raising his sentencing issues in his oral argument. I'll stand on the government's brief also with respect to the sentencing issues. The district court issued a sentence at the low end of the guideline, which is presumed reasonable and considered the defendant's arguments and sentencing. If the court has any further questions, I'll be glad to answer them. But if not, I will rest on my brief. No further questions. Thank you, Mr. Norwood. Thank you, your honors. Mr. Pringle, your rebuttal, please. Thank you, your honor. I would just, I guess, in my comments by saying, this was a traffic stop for a white line violation and a seat belt. And very quickly, it turned into a full-blown drug investigation. And I believe that's entirely the design of the stop. And I would respectfully suggest to the court that this seems to be not in line with the design of the stop. It encourages the government to tailor its investigation at a traffic stop for the reason of the stop. In this case, your honors, I believe that did not take place and warrants a suppression of the evidence. Unless the court has additional questions for me, that would probably conclude my comments. Nothing further. Thank you both. The court will take the case under advisement.